Okay, the next argued case is number 15, 1927 Zest IP Holdings v. Implant Direct Mfg. Mr. Heery. Good morning. Pleased to court. As a preliminary matter, I just want a small point of clarification or correction, actually. In our briefs, in our opening brief, our reply brief, we cited to the Ninth Circuit case of Hamilton v. Firestone. And in preparing for oral argument, I noticed that we had incorrectly cited the case. There was a quotation with reference to Hamilton v. Firestone, which is actually quoted in the district court decision. I provided the correct citation to counsel yesterday. I have correct citations for me, for the court, if it would like, today. And unless the court tells me it's not necessary, we intend to file a motion to correct the citation in our briefs. So I just wanted to bring that to the court's attention so we don't have an incorrect citation on the record. Okay. So proceeding, there's two issues. The issue of the dismissal and the striking of the expert witness report. I'd like to start with the dismissal. I think in order to prevail on the issue of the dismissal, I need to convince the court of two points. First, that the implant direct... Just to be clear, the other issue, the expert report, is immaterial if you lose on the dismissal issue. Correct. I think it's a moot point if the dismissal is. So I would like to concentrate, obviously, on the dismissal issue today. So I think I need to convince you that Implant Direct lost its right to rely on insurance to pay the judgment over the indemnification issue here, and that the district court abused its discretion when it refused to consider any conditions or apply any conditions as a condition for the dismissal of the lawsuit in response to the joint motion of Implant Direct's sideline, or IDSI and Zest. So there's really no question that Implant Direct is now in a worse position than it was before. It had insurance, and if the case had gone to trial and there was... Why is... Just tell me why the foul is wrong, which would mean that you're actually not in a worse position. One way of saying why you have not been legally prejudiced is either you haven't lost anything or what you have lost you gave away in the agreement, and that is your agreement in setting up IDSI and taking certain interests and promising certain kinds of indemnifications. And the New York case will determine that. It will either determine that you contractually ceded control of the litigation to IDSI and promised to indemnify it for certain liabilities it incurs in the litigation, voluntarily or otherwise, or the case has gone to trial and you haven't lost anything. Either way, all of your legal rights remain to be determined by the New York court without prejudice from whatever... What just happened in this case. With respect, Your Honor, I think I disagree with that. The New York court can certainly determine whether or not there's an indemnification obligation, but if there's an indemnification obligation, the New York court can't order our insurance company to pay IDSI the indemnification. That's not part of the contract of insurance. The insurance is there to pay for damages arising out of trademark infringement, and it's not to pay indemnification demand from IDSI. Okay, well maybe... So the New York court... I may be a little confused, but so what I guess I want to say in response to that is so maybe there's a second lawsuit you need to have against your insurance carrier. Well, that's more prejudice for our client. More attorney's fees, more expense, more uncertainty, more delay. If there's an obligation to pay IDSI, it's going to have to come out of Implant Direct's pocket, or Implant Direct is going to have to go through the process of another lawsuit to determine whether or not the insurance company is going to pay, and that outcome is uncertain, and it may never come to bear. If this case was not dismissed, we would be in a much better position. We'd have insurance to rely on, and the insurance company would be providing a defense. So what would you want... What do you want to have had happened? You wanted the litigation to go forward? Well, any option that we have is better than the option we have right now. There are many things that the court could have done. Yes, the litigation could have gone forward. We could have defended on the merits. We hopefully would have been successful, and nothing would be owed to the plaintiff, or if there were damages for trademark infringement, the insurance company would pay for it. Another option, a second option as a condition for the dismissal, is the district court could have required IDSI to give up its indemnification claim. That would have put our client in as good a position as it was before. Another option is to require IDSI and Zest to enter into good-faith settlement negotiations with Implant Direct and its insurance carrier, which would, again, potentially... Implant Owns has an ownership interest in IDSI, correct? Implant Direct owns 25% of IDSI. That is correct. So this is a curious situation. The owner of 25% of the company has a dispute with the company saying the company shouldn't have settled. That is correct, Your Honor. And there is, as you know, as is referenced, there is separate litigation between the minority owner and the majority shareholder. Now, we have in the record portions of, I guess what has been referred to as the transaction agreement? I believe the entire transaction agreement is in the record. Oh, it isn't? Okay. But we don't have in the record what appears to be the other critical document, the insurance agreement, or the insurance contract. Is that correct? The insurance contracts themselves are not in the record. That is correct. We have the declaration of Dr. Nisnik who testifies about the existence of the record. The transaction agreement refers to the insurance agreements. Counsel for IDSI concedes the existence of the insurance agreements in oral argument and various pleadings in the case. So where do the issues of possible liability stand? It looks as if the entire structure has become moot. That can't be. Where does it stand? I apologize. I don't follow your question, Your Honor. I'm trying to understand what it is that we're asking for. You have a possible speculative potential liability maybe, but not yet? No, we have liability. We have an indemnification obligation to pay IDSI for the amounts that it has paid to Zest. That's not speculative. That's real. That obligation is now vested to pay? That demand is real. We supplemented the record. The court granted our vote to supplement the record with the board minutes from IDSI where the board has made a resolution to seek recovery from Implant Direct. For the entirety or for a portion of what it paid to Zest? Did the record not say? We haven't received a formal written demand from IDSI as to exactly what their theory is, but they have made the board resolution to seek indemnification. So you have no demand for payment of anything? We have the board resolution from IDSI. We have no formal lawsuit in file or anything like that for payment yet. Under the transaction agreement, am I correct in understanding that what IDSI can claim by way of indemnification are damages incurred prior to the time it came into the suit, correct? I believe that's correct. The pro rata share of the damages, yes. It would be the damages that we would rely on to our insurance company. It would be a pass-through for us. But is there a difference between the patent and the trademark damages? Their expert witness, plaintiff's expert witness, the expert witness report is substantially continuous. Because as I understand it, the whole discussion about the insurance seems to focus on trademark. That's right. Our only coverage is for insurance. We don't have any patent infringement insurance or anything like that. But the products are the same. There weren't separate products that were sold that were alleged to infringe a patent and separate products that were sold to infringe the trademark. The universe of products is one and the same. Again, I guess since you don't actually have a demand, and maybe there's material in the record, but I guess I was imagining, and just correct me if I'm wrong, that the settlement was in 2015. The transaction was five years earlier. Maybe, I guess, IDSI was kind of continuing the business that was accused. Maybe only a small portion of what they agreed to pay Zest is even arguably within your trademark-only pre-2010 indemnification agreement. Do we know anything about that? We don't know exactly because we haven't received a written confirmation from the plaintiff yet. But we would agree that the amount that we would have to indemnify is only the portion that was before the transaction related to trademark. No, we have an infringement obligation, I'm sorry, an indemnification obligation for all the damages, but yes, the insurance would cover only the trademark damages. Your Honor touched on a point about... Your indemnification obligation runs only up to December 31, 2010? That would be our argument in any lawsuit. Do they dispute that? I don't believe they dispute that, Your Honor. But Your Honor made a point about there being no written formal demand yet. Counsel for IDSI is a smart person and they have smart people on their side. They obviously know that if they give us a written demand for indemnification while this appeal is pending, we can point to it. So there's a good reason why they haven't set this up. So there's apparently a suit in New York State Court already underway, is that right? There's a suit in New York State Court. What is that? Who sued whom for what? I believe IDSI sued Dr. Nisnik and Implant Direct. Dr. Nisnik's the owner of Implant Direct. I'm not counsel handling that Is that suit about this indemnification? My understanding is it's not, Your Honor. How much time does IDSI have to seek indemnification? Is there kind of a statute of limitations as to when it can come after Implant Direct for indemnification? My recollection is there's nothing in the transaction agreement that states that. It would just be a regular statute of limitations under either New York or California law depending on where the particular statute of limitations would be. New York, I believe, five years for written contract. But as far as you know, the indemnification language of the transaction agreements doesn't say you have to tell us within 90 days. My recollection of the transaction agreement doesn't say that. So it still looks as if everything is tentative, hypothetical, speculative? That the controversy has not yet gelled that you're asking for advice as to what might happen in the future? Oh, absolutely not, Your Honor. I would disagree with that. There is definitely an indemnification demand. But you haven't been asked to indemnify. We have received no formal written notice for indemnification. Exactly. You haven't been asked to indemnify. And you may never be asked. I would disagree with you, Your Honor. The IDSI Board of Directors has passed a resolution seeking indemnification from Implant Direct. My client, Implant Direct, is a minority shareholder in that company, has access and has been given access to the Board of Directors minutes. So that would qualify, in my view, as a formal demand. You're saying the Board has authorized the officers of the corporation to seek indemnification? Is that what it is? I believe that's correct, Your Honor. But that suggests that the officers may well seek indemnification, but they have a choice as to whether or not to. The Board of Directors has expressed its intent to go forward with the indemnification. You're represented on the Board? We are not represented on the Board at this time. We formerly had a Board seat. As a minority shareholder, we're entitled to receive the minutes. I'd like to touch on a few points in relation to Zest and IDSI's argument. As we noted before, Zest filed nothing in response to our motion to dismiss. We think that they're raising new arguments on appeal. IDSI also, with their complaints about no evidence about the insurance policy, things like that. These arguments were not raised in the district court. I'll reserve the rest of my time for rebuttal. Thank you, Mr. Hury. Ms. Ferry? Good morning, Your Honors. If it may please the Court, we're here today in response to an extraordinary argument made by Implant Direct. It contends that Zest and Implant Direct I just want to make sure, because you represent IDSI, correct? I represent Zest. Oh, Zest, okay. Zest Anchors and Zest Holdings. What Implant Direct has contended is that both Zest and Implant Direct Sybron should go back to the district court and try this case, notwithstanding our settlement and voluntary dismissal of the case with prejudice, simply because they don't want to. I'm sorry, that's not its only request, unless you disagree with I think Judge Stahl asked Mr. Hury, what do you think should have happened in the district court? And one of the alternatives he suggested was go and try the case, but that wasn't the only one. He also said, attach a condition whereby you give up your indemnity, not you, the other guys, your now colleagues, give up the indemnity. Strangely enough, yes, Your Honor, we are. Yes, Your Honor, that's true. Under either of those scenarios, whether we go back and try it, which is, in my mind, quite extraordinary, or that the district court should have attached some conditions, the basis of that is really that they don't want to potentially have to pay this indemnification. Ms. Ferry, you kind of, I guess, view yourself as an innocent, your client as an innocent bystander in this unfortunate dispute between Implant and IDSI, correct? Yes, Your Honor, and this dispute that's going on between these two companies now is in the Southern District of New York, and this is a far-ranging dispute. Oh, it's not in New York State Court, it's in  whichever court it's in, but who sued whom for what? Mr. Mead can probably give you more of the details. Oh, because you're not party to that one. Right, we are not party to it, but we have mentioned and we mentioned one of the arguments that Mr. Hurry made was that after they moved to ask the court to dismiss this voluntary dismissal, and they objected to it, that we made no arguments. We had a hearing, an order to show cause hearing, and at that hearing we mentioned this, among other things, which is this was a dispute, it seemed, between these two parties, and we were caught in this and were being asked to try this case when in our minds we'd come to an amicable resolution. So certainly in that hearing we brought up the issues of this insurance policy that no one knows anything about because it wasn't put into evidence. So we didn't know if the proceeds really belonged to Implant Direct or Implant Direct-Cybron. It's very speculative. Can I just ask, I think I know what your answer has to be to this, but is there anything in the record about whether when you were negotiating a settlement with IDSI the topic came up that maybe IDSI could pay you more than they might otherwise because they're going to get a bunch of the money back from the third party, making you really maybe not so completely a bystander here? No, Your Honor. There's nothing of that in the record. And what would the I think the evidence in the record that would be quite contrary to that is the fact that in this transaction agreement that Implant Direct of course willingly entered into with Cybron at the time they decided to sell their company is that they transferred over all of the assets and the liabilities of this company including the lawsuit. And Implant Direct-Cybron took over everything. They took over the litigation and as Judge Curiel found when we moved to add Implant Direct-Cybron to the case, Judge Curiel said, well as successor and interest of Implant Direct, they're liable for everything. So they basically told, the judge told Implant Direct-Cybron, you're liable, you'll have to go at some point and recover any part of this that you can under indemnity. Is that a preclusive ruling or does it remain open to Implant Direct in the New York litigation or elsewhere to say, oh no, no, we are not liable? Because if you're now saying that that issue is settled in this case, then maybe they really are legally prejudiced. No, Your Honor. The only thing that was settled was that potentially if we got to trial a successor and interest would be liable for the damages. But what's going on in the court in New York, Your Honor, is the dispute between the two parties about this business deal that has gone wrong. And what Implant Direct-Cybron has argued is when you sold us the company and you transferred everything to us, you transferred the insurance policy as well. So I think the real argument here, Your Honors, in the question is that when Judge Curiel dismissed this case, in doing that, did this constitute plain legal prejudice to Implant Direct? And our argument and answer to that is no, of course not. That legal prejudice has to go to some legal claim, some legal argument that they had in the case. And that is not the case here. What we're talking about is simply this dispute these two companies have over this insurance policy. And this clearly can be handled within the Southern District of New York. Just to be clear again, this is not your dispute, but you are here trying to preserve a final judgment. Is the dispute between them and them just over insurance? Or is it also about whether Implant is actually on the hook for indemnification for some part of what IDSI promised to pay you? Your Honor, I think that there are many, many issues in that. It goes much beyond what we're talking about today. I don't believe that any demand for indemnification is made. My only part, my point is that they're having a contractual dispute and the transaction agreement that they entered into said those disputes must be handled in the Southern District of New York. So I believe what Judge Curiel said is that that is the proper forum. But no, as Judge Newman had said and mentioned earlier, no formal indemnification notification has been given. So this is quite speculative. This is simply what Judge Curiel said was that would be a better forum. That this dispute was not before him as to who will get this proceeds. Will any proceeds ever come out of this? That should be handled between the parties in New York. And the other point I'd like to make is that under the law, the other part of this plain legal prejudice, it has to be as a result of the dismissal. And I don't think that they can make that aspect of the precedent as well. Because the fact that they may or may not get these proceeds doesn't come from the fact that this case has been dismissed. And if we went back and actually tried the case and they lost and they made a claim for this, there would still be a dispute between Implant Direct and Implant Direct-Cybron. So it's not stemming from this dismissal of the case. But if they won, then that would be the end of their liability. Well, if they won, Your Honor, and they were not found, and there was no liability at all, yes. But as vis-a-vis the prejudice that they're talking about that they can't basically collect from this insurance policy, that dispute will go on between these parties. So the fact of when a plaintiff goes into the court, and we did this, of course, jointly with Implant Direct-Cybron, and asked for this dismissal, the court in their discretion, of course, can allow dismissal when the party requests that, unless there is this legal prejudice, which we don't believe was met. If I might just for a moment address the other issue about the expert reports, the second issue. Even though it wasn't argued? Even though it was not presented during oral argument here? What are you going to respond to? Oh, I'm sorry, Your Honor. I thought that he mentioned that quickly at the end of his argument. Oh, did he? Oh, maybe I missed it. I'm sorry. Well, Your Honor, then I will leave it at that. Okay, we'll hear from Mr. Mead. So what's happening in New York? Dr. Nisnik was on the board of the joint venture. The acquisition agreement left him as the manager of that company for a period of years. That company being? The joint venture, IDSI, my client. So remember the structure. He owns entities that own 25% of the joint venture, and he is left to run that venture for a number of years with oversight from an IDSI board. The lawsuit was going on in that period of time when he was running the company, and with all due respect, This lawsuit. This lawsuit, right. And we didn't get joined to it. The joint venture did not get joined to it for years after the acquisition agreement, another bizarre twist. So what happened was that there was the usual dispute about management control by the entrepreneur and the acquirer, and then there was an investigation, unfortunately, of potential sexual improper sexual conduct by Dr. Nisnik, and a board investigation of that. And Dr. Nisnik submitted a resignation to the board, potentially to forestall that investigation. The difficulty is that resignation arguably triggered the right of the acquiring entities to buy his 25% stock at a lower price than without the resignation. You just have no idea. And I want to make it clear that I am an imperfect reporter about these state court proceedings. I don't represent the Cybron entities in that case. Cybron is the 75%? Yeah, right. And you have to bear in mind, for reasons I'm about to tell you, there's a reason I'm kind of not involved is I'm not volunteering. I'm a potential witness in this dispute because of this lawsuit. But where is the potential liability? I mean, the more you tell us there, the more it looks as if this is sort of an interim interlude. So where do things stand now? Very complicated story. So there's the New York state court arguing over how much the acquiring entity has to pay Dr. Nisnik for his 25%. And that has nothing to do with the insurance claim? Nothing to do with insurance, nothing to do with this at all. Okay? Dr. Nisnik and his entities have sought to amend in the New York state court to add a claim that by settling this litigation, IDSI and the Cybron entities harmed the business of the joint venture because we agreed to stop making the alleged infringing product. I can tell you the client had good faith business reasons for doing that independent of the litigation. But in any event, it is Dr. Nisnik, not us, who is currently trying to inject this settlement into the New York state case. Put aside for a minute the existing New York state case. Is it your view that any issue about whether Implant Direct is on the hook for some share of the amount that IDSI has remains fully open without preclusive effect in a potential future case between Implant and Direct and IDSI? Absolutely. And it seems to me obvious that that is the case. There is nothing in Judge Curiel's order that determined anything about the insurance proceeds or the transaction agreement. There was a reference, I think, that Ms. Ferry made to, I asked her a question about, Judge Curiel said something about confirming their indemnification of IDSI or something, but no preclusive ruling on that? Because that might actually matter. That might begin to make a case for legal prejudice. No, just the opposite. What Judge Curiel said in his order granting the dismissal was all of these issues, all of them, can be determined by the New York state court. Not my jurisdiction. That's specifically at the appendix at page 2, I believe, in his order. But if I could, and I know it's going to take a little more time than I'm allotted, but can I talk to you briefly about the uncertainties that Implant Direct faced before the dismissal and the uncertainties it faces afterwards? Because there is nothing plain about their claim of prejudice here. Plain is a word that has a statutory meaning under the case law. It means not speculative, Your Honor, we kept asking. It means concrete. And then it also has to be legal. Remember, not contractual, not about attorney's fees. Those words have real meaning. Before the dismissal, here's what Implant Direct faced. Yes, they had insurance that we bought, so IDSI that owns the insurance policies now. The insurance company was paying under a reservation of rights to defend the trademark case. There is no insurance for the patent case. Implant Direct had the possibility that the insurance company would deny coverage, would seek reimbursement of the attorney's fees that it had already paid, and would deny any claim for any judgment with respect to the trademark case. So all of that was uncertain beforehand. And they also faced the possibility that if the case went badly, that they would receive a multi-million dollar verdict. And here, I hate to say this because you might think it's slightly contradictory to our position, but I cannot, as an officer of the court, represent to you that we do not have arguments that they might have to indemnify us for post-acquisition conduct or damages with respect to the lawsuit for this reason. There are arguments out there. If you look at the indemnification agreement, what it says is all damages that we suffer as a result of pre-acquisition conduct. So there's a potential argument that by putting this product out and marketing it before the acquisition, that led to consequences that continued afterwards. My point to you, Judge, is how uncertain all of that is. In other words, if I'm a lawyer trying to decide whether to sue Implant Direct for indemnification, which we haven't done, I really want to make it emphatically clear, the Cybron entities have not sued Dr. Nisnik and his entities. There are good reasons not to, and good reasons to try. The good reasons not to, frankly, are that Dr. Nisnik has more money than God and likes to legate. But we're told that there's a resolution of the Board of Directors who, in theory, should have considered what you're telling us and resolved, balanced all of the issues. Well, that's precisely it. This resolution is not a firm demand. All it does is, as you point out, authorize you to consider it and go ahead and do it if you decide it's in the company's interest. Authorizing who? The officers of the corporation, right? Exactly. But no one has made that judgment yet, and my point to you is, they've got arguments that the only indemnification we owe is for damages that might accrue before the acquisition in 2010. I can tell you, as a matter of math, those sales are pretty small, compared to what Zest was claiming with respect to post-acquisition But you're standing here telling us that you're not prepared to limit yourself to that period. Well, but what I'm saying is, realistically, it's a tough lawsuit. I mean, we've got arguments, they've got arguments. Plain legal prejudice requires concreteness, it requires certainty, it requires more than speculation, it requires more than as the Wetlands case said, creating uncertainty about the value of your land and your contract. Well, if it's uncertain, one of the things that we should be concerned about is not inadvertently closing out something which hasn't yet been resolved. Where does that leave us? Where did that leave the district court? Well, so the district court correctly held that the issue about whether there's insurance, it's a contractual right, and who owns that insurance, is a matter for the transaction agreement. The transaction agreement says Courts of New York. The issue about whether Implant Direct owes indemnification or not, a claim we still haven't made. I really want to make that clear, and there are good reasons arguably not to. Again, a matter of contract in the transaction agreement. The transaction agreement says it must be decided by the Courts of New York. So there is nothing, absolutely nothing, about the settlement of this case that precludes Implant Direct, as it is trying to do in the New York case, from suing the Cybron entities and saying, you wrongfully entered into a settlement that is hurting my interests and I want money from you as a result. That is literally what Dr. Nisnik and his entities are currently trying to do in the New York litigation. All of these claims, in other words, if we wrongfully settle the case and hurt the business, he can present a claim for damages in the New York courts. That, as Judge Curiel said, the New York courts can decide. Let's be sure that we don't receive just the one side of the story in terms of the impact of what's happening in New York. What we do need to understand is the extent to which the issue which is being raised here will be resolved by the decision in New York, whichever way it goes. So that would require us to bring a claim for indemnification in New York, which hasn't happened yet. So you think that it would not be resolved or that it might and it might not? Well, if we brought such a claim, of course it would be resolved in the courts of New York under the terms of the transaction agreement. There's nothing in the settlement of this case. But such a claim has not been brought, is that right? That is correct. And so the potential outcome of a potential claim is utter speculation. It is not plain legal prejudice. Judge Curiel got it right. But where does that stand in terms of amending the complaint or whatever would be done? I have the impression from the briefs that that case has been ongoing for a while. Is that wrong? That case has been ongoing for years. The Cybron entities have not brought a claim for indemnification yet. I can't speak to you about the deliberations. I'm not counsel and I'm not party to the strategic decisions. All I can say as an outsider is, if you look at the expense involved and the potential recovery involved, it is utter speculation to believe that it's automatic that Cybron would bring this case for indemnification and automatic that they would be worse off as a result. This settlement saved them attorney's fees, which we arguably have a right to recoup back indemnification. In other words, if this case proceeded, they would have if the insurance company stopped paying, they pay insurance they pay the fees themselves. There are all sorts of harms that Implant Direct potentially would suffer from this lawsuit from when it wasn't, if it hadn't been settled. There is absolutely nothing in what Judge Curiel did that is precluding them from bringing a case in New York seeking damages against us with respect to any aspect of the settlement. Nothing. Okay. Any questions? Okay. All right. Thank you, Mr. Mead. All right. Mr. Hury. Just a couple of brief points. Mr. Mead is correct saying that there's no claim for indemnification. As I said earlier, I'm not aware of any. Nothing has been filed directing indemnification. There's many good reasons for that. As he says, one of the reasons is that if they made a claim for indemnification, we could bring it to the attention of this court, and of course that would obviously strengthen our position here. So that's something to keep in mind. They have a strategic reason for not making a demand while this appeal is ongoing. But there's nothing to stop IDSI once this appeal is decided the day after your opinion comes down, whichever way it comes down, from then immediately moving to indemnify, or to seek indemnification. But Mr. Mead says that it's speculative as to what happened as a result of I'm sorry. Let me get my point here. Mr. Mead says that all of this is speculative about what will happen, what won't happen in indemnification. One thing is not speculative, and that is we had insurance, and now we don't have insurance. That's not speculative. We had insurance before... Mr. Mead did refer to certain things as being speculative, but the one thing in his position he was quite certain on, that whether there's a strong case or a speculative case, all of this belongs in litigation in New York. But nothing in New York can bring back the insurance. The insurance is dead. It's gone. It's not going to be resurrected. Well, there could be a claim for damages because of that. There could be a claim for damages, but we don't have insurance. Right now we have insurance. We would have had insurance. But couldn't Implant Direct bring a claim against IDSI claiming or alleging that IDSI's conduct damaged it in a number of ways, and one of the ways it damaged it was the loss of insurance, and there would be some monetary fix on that. Certainly it could do that. I would agree with Your Honor on that. But it puts us in a worse position than we are now, or were before the dismissal. Before the dismissal, we were defending a lawsuit. We had insurance that was paying for the cost of defense. We had potential for recovery of any damages arising out of trademark infringement. With the dismissal, what's not uncertain, what is certain, is that insurance is gone, and any future lawsuit we have to pay for out of our own pocket. There's no insurance to provide defense. There's no insurance to provide attorney's fees. So we're in a much worse position than we were before. So what Judge Curiel has done by dismissing the case... Are you still in a worse position if there's never a claim for indemnification? I mean, there could be a claim for indemnification next year or say it never comes. If it never comes, I would agree that we are not in a worse position. That is correct. Anything else? On a personal note, this is my first argument in front of your court, in front of the CAFC. The anticipation was much worse than the argument. Thank you. We'll take that as a problem. The case is taken under submission. Thank you.